IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| *ex. rel.* JACK FORTENBERRY | ) | |
| | ) | |
| Plaintiff/Relator, | ) | |
| | ) | |
| v. | ) | Case No. CV-11-247-R |
| | ) | |
| (1) THE HOLLOWAY GROUP, INC., | ) | |
| an Oklahoma Corporation; | ) | |
| (2) WILLIS HOLLOWAY, JR., M.D.; | ) | |
| (3) JANET SCOTT; and | ) | |
| (4) SOUTHERN OKLAHOMA | ) | |
| TREATMENT SERVICES, INC., | ) | |
| an Oklahoma Corporation; | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

Before the Court is the Motion for Partial Summary Judgment filed by Plaintiff Jack Fortenberry, Doc. No. 134, the Motion for Summary Judgment filed by Defendants The Holloway Group, Inc. (HGI) and Willis Holloway, Doc. No. 135, the Motion for Summary Judgment filed by Defendant Janet Scott, Doc. No. 136, and the Motion for Summary Judgment filed by Defendant Southern Oklahoma Treatment Services, Inc. (SOTS), Doc. No. 140. For the following reasons, Plaintiff's motion is DENIED, the motions filed by Defendants HGI, Willis Holloway, and Janet Scott are GRANTED, and the motion filed by Defendant SOTS is GRANTED in part and DENIED in part.

## I. Procedural History

This *qui tam* action was originally filed on March 8, 2011, and the United States elected not to intervene on June 4, 2012. One month later, Plaintiff filed a redacted

Complaint asserting claims against Defendants based upon their alleged fraudulent activity. Specifically, Plaintiff brought claims under the False Claims Act (FCA), as well as common law claims for unjust enrichment and payment by mistake.

On February 6, 2013, this Court dismissed Plaintiff's claim for conspiracy under 31 U.S.C. § 3729(a)(3), and his claim for back pay and other damages and fees under 31 U.S.C. § 3730(h). Then on January 24, 2014, the Court denied Plaintiff's motion requesting the dismissal of the abuse of process counterclaim brought by Defendants HGI and Willis Holloway.

The parties subsequently engaged in a protracted discovery process and failed to complete discovery in a timely fashion. Notwithstanding this, Defendants HGI, Willis Holloway, and Janet Scott filed a Motion for Summary Judgment on June 10, 2014, based upon Plaintiff's purported lack of standing due to his October 31, 2012 bankruptcy filing.[1] Shortly after this—and over three years after the case was originally filed—Plaintiff sought an Order from the Court allowing him to have new counsel. The Court permitted the substitution of counsel, and it also ordered the parties to confer and establish new deadlines for the remainder of the case, as it was clear that neither side would be capable of meeting the previously set deadlines. Then on July 21, 2014, the Court denied Defendants' Motion for Summary Judgment on the basis of Plaintiff's alleged lack of standing, and the Court granted Defendants' motion with regard to Plaintiff's legally fallible claims on behalf of the United States for unjust enrichment and payment by mistake. *See* Doc. No. 133.

---

[1] Notably, Defendant SOTS failed to join in this motion. *See* Doc. No. 133, at 5 n.3.

Remaining in this case are claims under 31 U.S.C. § 3729(a)(1) and (2) of the FCA.[2] In his motion, Plaintiff argues that Defendants committed fraud as a matter of law under these provisions of the FCA, and he states that he will prove damages at trial. And in three separate motions, Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims.

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 561 F.2d 202, 204 (10th Cir. 1977) (citations omitted). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. The False Claims Act

The FCA "covers all fraudulent attempts to cause the government to pay out sums of money." *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir 2008) (quotation omitted). Under the FCA's *qui tam* provisions, an

---

[2] The pertinent sections of the FCA were modified and renumbered by the Fraud Enforcement Recovery Act of 2009 (FERA). *See* 123 Stat. 1617. FERA provides that "the amendment made by this section . . . shall apply to conduct on or after the date of enactment, except that [the amendments to § 3729(a)(2)] shall take effect as if enacted on June 7, 2008, and apply to all claims . . . that are pending on or after that date." 123 Stat. at 1625. All conduct and all claims relevant to this case took place well before June 7, 2008, meaning the former version governs. *See United States ex rel. Sanchez-Smith v. AHS Tulsa Reg'l Med. Ctr.*, 754 F.Supp.2d 1270, 1272 n.3 (N.D. Okla. 2010) (citation omitted). The citations to the statute in the parties' briefs are to the former version, and the Court will follow suit.

individual may sue on behalf of the government. *See* 31 U.S.C. § 3730(b). The government may intervene and take over the individual's case, *id.* § 3730(b)(2) and (c)(3), but it frequently declines to do so. When this occurs, the individual plaintiff is referred to as a relator, and the individual plaintiff may proceed with the litigation and share in any recovery with the government. *Id.* § 3730(d).

Under § 3729(a)(1), civil liability is imposed when a person "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval." And under § 3729(a)(2), a party is rendered liable for "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."

Liability arises under § 3729(a) "when a government payee submits either a legally or factually false request for payment." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1168 (10th Cir. 2010). Factually false requests involve "a showing that the payee has submitted an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Id.* (quoting *Conner*, 543 F.3d at 1217) (internal quotation marks omitted). Legally false requests, on the other hand, involve a "knowingly false certification of compliance with a regulation or contractual provision as a condition of payment." *Id.* (citing *Conner*, 543 F.3d at 1217).

Moreover, legally false claims can be based upon both express and implied theories. *See id* at 1168-69; *Conner*, 543 F.3d at 1217. "Claims under an express-false-certification theory arise when a payee 'falsely certifies compliance with a particular

statute, regulation or contractual term, where compliance is a prerequisite to payment.'" *Lemmon*, 614 F.3d at 1168 (quoting *Conner*, 543 F.3d at 1217). Importantly, "[t]he payee's 'certification' need not be a literal certification, but can be any false statement that relates to a claim." *Id.* (citing *Conner*, 543 F.3d at 1217; *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006) ("So long as the statement in question is knowingly false when made, it matters not whether it is a certification, assertion, statement, or secret handshake; False Claims liability can attach.")). Express-false-certification claims may be brought under any subsection of § 3729(a). *Id.*

By contrast, "claims under an implied-false-certification theory do not require courts to examine a payee's statements to the government." *Id.* Instead, the focus is "on the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment." *Id.* at 1168-69 (quoting *Conner*, 543 F.3d at 1218). Thus, in analyzing claims under an implied-false-certification theory, the Court is not to concern itself with whether the payee made an expressly false statement in tandem with the submission of the claim, but instead the Court is to look at "whether, through the act of submitting a claim, a payee knowingly and falsely implied that it was entitled to payment." *Id.* at 1169 (citing *Shaw v. AAA Eng'g & Drafting Inc.*, 213 F.3d 519, 532-33 (10th Cir. 2000); *Conner*, 543 F.3d at 1218). Implied-false-

certification claims may be brought under § 3729(a)(1), but not under § 3729(a)(2).[3] *Id.* at 1168 (citing *Shaw*, 213 F.3d at 531-32).

Analyzing Plaintiff's claims will prove difficult because Plaintiff has failed to indicate whether he is asserting that Defendants were submitting legally or factually false requests for payment. Plaintiff has also failed to inform the Court whether his claims are being pursued under either an express-false-certification theory or an implied-false-certification theory.[4]

## IV. Relevant State Regulations[5]

In order to participate in the Medicare/Medicaid programs, a provider must comply not only with federal regulations, but also with state regulations. Okla. Admin. Code § 317:30-3-2 states:

> In order to be eligible for payment, providers must have on file with [the Oklahoma Health Care Authority (OHCA)], an approved Provider Agreement. Through this agreement, the provider certifies all information submitted on claims is accurate and complete, assures that the State Agency's requirements are met and assures compliance with all applicable Federal and State regulations.

Okla. Admin. Code § 317:30-5-240(b)(1) explains that a provider must also be accredited as a provider of behavioral health services from certain entities in order to receive reimbursement. Finally, Okla. Admin. Code § 317:30-5-240(c) provides:

> (1) Organizations who have . . . accreditation will supply the documentation from the accrediting body, along with other information as required for

---

[3] The Tenth Circuit has reasoned that this is the case, because "§ 3729(a)(1) requires only the presentation of a false or fraudulent claim for payment or approval without the additional § 3729(a)(2) requirement of a false record or statement." *Lemmon*, 614 F.3d at 1168 (quoting *Shaw*, 213 F.3d at 531-32) (internal quotation marks omitted).

[4] To be fair, the Court cannot find a single mention of any of these distinctions in the law in any of the eleven briefs submitted at this summary judgment stage, even though these distinctions will greatly affect the analysis of Plaintiff's claims.

[5] The Court cites and uses the regulations as they existed in 2007 when the alleged fraudulent activity occurred.

contracting purposes to the OHCA. If the application is approved, a separate provider identification number for each outpatient Behavioral Health Service site will be assigned. The contract must include copies of all required state licenses, accreditation and Medicaid certifications.

(2) Each site operated by an outpatient mental health facility must have a separate provider number. A site is defined as an office, clinic, or other business setting where outpatient behavioral health services are routinely performed. When services are rendered at the member's residence, a school, or when provided occasionally at an appropriate community based setting, a site is determined according to where the professional staff perform administrative duties and where the member's chart and other records are kept. Failure to obtain and utilize site specific provider numbers will result in disallowance of services.

**V. Facts**

Plaintiff is an individual supervised provider of mental health services, and he worked for HGI, SOTS, or both between July 2007 and September 2007.[6] Defendant HGI is a psychiatric clinic, and Defendant Willis Holloway is a medical doctor and the CEO of HGI. Defendant SOTS provides psychotherapy treatment to those eligible to receive such treatment through Medicaid via the OHCA. And Defendant Janet Scott worked in some capacity for Defendants Willis Holloway and HGI during this time, although it is unclear whether she also worked for Defendant SOTS during this time.

In 2007—and of particular importance to this case—Defendant HGI did not have either a provider contract with the OHCA or the requisite accreditation, meaning that it was not entitled to make claims with the OHCA for Medicaid reimbursement associated with the treatment of its patients. Defendant SOTS, however, did have the required

---

[6] The parties disagree as to whether Plaintiff was employed by Defendant SOTS during this time period. At some point prior to this, though, Plaintiff worked for Defendant SOTS in some capacity.

provider contract and accreditation, and the provider number associated with its primary place of business was 200049040.

On June 22, 2007, Plaintiff filled out an employment application with both Defendant HGI and Defendant SOTS.[7] Plaintiff began seeing patients at the HGI facility in July 2007, and he did so for the duration of his approximately three-month-long term of employment. During this time—and in the very least—SOTS was renting some of HGI's unused office space and seeing patients in this unused space. Defendant Willis Holloway avers that at this time, he was also providing SOTS with access to assistance from HGI's support staff at the HGI facility.

While Defendants state that there was merely a rental agreement between HGI and SOTS at this time, Plaintiff asserts that something much more was taking place. Specifically, Plaintiff asserts that Defendants had devised a fraudulent scheme in violation of OHCA regulations in an effort to obtain Medicaid funds to which they were not entitled. Plaintiff also alleges that Defendants were using his services in furtherance of this scheme. The purported scheme was as follows: Plaintiff would see patients at the HGI facility; Defendant Janet Scott would copy the clinical notes and other records Plaintiff made during these treatments, leave the copies at HGI, and transport the originals to SOTS' primary facility; SOTS would bill Medicaid via the OHCA for these treatments, representing through its provider number that the treatments were performed by SOTS employees at the SOTS primary facility; SOTS would then receive Medicaid

---

[7] Plaintiff asserts that he was not employed by Defendant SOTS at this time. He states that when he asked why he needed to fill out an employment application with Defendant SOTS at this time, he was told that it was "just the way [HGI did] it." Doc. No. 143, Ex. 4, at 3-4.

payments from the OHCA for these treatments and send a portion of this money back to HGI; and HGI would then pay Plaintiff a portion of this money for his services. In stark contrast to Plaintiff's assertions, Defendants all deny involvement with any scheme to defraud the government, instead arguing that SOTS' patients were merely treated by SOTS' employees at the office space SOTS was renting from HGI.

## **VI. Plaintiff's Motion**

Plaintiff contends in his motion that he is entitled to summary judgment on the issue of whether Defendants committed fraud within the meaning of the FCA. Plaintiff asserts that Defendants violated Okla. Admin. Code §§ 317-30-3-2, and 317:30-5-240(b)(1), (c)(1) and (2), in submitting claims for reimbursement to the OHCA for patients represented to have been seen at SOTS' primary facility, when these patients were actually seen at the HGI facility. In support of these assertions, Plaintiff has submitted the following evidence: (1) an HGI statement to Plaintiff, dated September 28, 2007, listing patients treated by Plaintiff ranging from July 2007 to September 2007, and recognizing that the total amount owed to Plaintiff for his services was $792.00; (2) an HGI paycheck to Plaintiff, dated September 28, 2007, in the amount of $792.00; and (3) a spreadsheet, held out to be an OHCA spreadsheet, showing many of the same patient names and treatment dates as seen on the HGI statement to Plaintiff, but listing the provider name and number as SOTS and 200049040. Based upon this evidence, Plaintiff asserts that "the fraud is clear," and that he is entitled to summary judgment on the issue of whether a fraud occurred.

As previously mentioned, Plaintiff has failed to explain much of the legal basis for his claims. While it is at least clear that Plaintiff contends Defendants submitted legally false claims for payment to the OHCA, it is unclear whether Plaintiff intends to press his claims based upon an express-false-certification theory or an implied-false-certification theory. Therefore, the Court will analyze the evidence and arguments presented under both theories.

## A. Express-False-Certification Claim

To the extent Plaintiff is pursuing his claims under an express-false-certification theory, Plaintiff must establish that Defendants "knowingly submitted legally false requests for payment to the government," "that the government paid the requests," "that the requests contained a false statement[,] and that the statement was material to the government's decision to pay." *See Lemmon*, 614 F.3d at 1170. With regard to Defendants HGI, Willis Holloway, and Janet Scott, there is no evidence that any of them ever submitted claims to the OHCA for Medicaid reimbursement, meaning that any express-false-certification claim Plaintiff is attempting to bring against them must fail. Indeed, Plaintiff testified that the only Defendant in this case that submitted claims to OHCA was Defendant SOTS.[8] *See* Doc. No. 146, Ex. 1, at 6-8.

Additionally, Plaintiff has not included as evidence any claims that Defendant SOTS submitted to the OHCA during this time. This is fatal to any express-false-certification claim Plaintiff is attempting to make, because in order to analyze such a

---

[8] Plaintiff's arguments tend to indicate that Plaintiff misunderstands the nature of the claims still in this case. Plaintiff is clearly arguing that these Defendants were part of some sort of conspiracy to submit legally false claims to the OHCA, but the Court dismissed Plaintiff's conspiracy claim under 31 U.S.C. § 3729(a)(3) over a year ago.

claim, the Court must be able to determine whether any false certification was made to the OHCA in tandem with the submission of the claims for reimbursement. *See Conner*, 543 F.3d at 1217.

Moreover, if Plaintiff is attempting to argue that Defendant SOTS' provider agreement with the OHCA contained an express false certification such that it rendered SOTS' submissions to the OHCA fraudulent, this still fails. Although Plaintiff has not supplied the Court with Defendant SOTS' provider agreement, making it difficult to analyze such a claim, the OHCA regulations require that SOTS' provider agreement must have contained general sweeping language assuring "compliance with all applicable Federal and State regulations." *See* Okla. Admin. Code § 317:30-3-2. In accordance with Tenth Circuit precedent, though, this type of language is too general to serve as the basis for an express-false-certification claim. *See Conner*, 543 F.3d at 1218-20 (finding that an annual report, which contained broad language representing compliance with laws and regulations, was insufficient to support an express-false-certification claim). Therefore, Plaintiff's claims of fraud based upon an express-false-certification theory fail as a matter of law as to each Defendant, and his Motion for Summary Judgment must be DENIED with regard to this theory of fraud under the FCA.

## B. Implied-False-Certification Claim

In order to establish an implied-false-certification claim, Plaintiff must show that Defendants "knowingly submitted legally false requests for payment to the government, that the government paid the requests and that, had the government known of the falsity, it may not have paid." *Lemmon*, 614 F.3d at 1169. Once again, Plaintiff's claims against

11

Defendants HGI, Willis Holloway, and Janet Scott fail, because as Plaintiff testified, only Defendant SOTS submitted claims for reimbursement to the OHCA during this time. *See* Doc. No. 146, Ex. 1, at 6-8. It follows that Plaintiff's Motion for Summary Judgment is DENIED with respect to his claim of fraud under an implied-false-certification theory against Defendants HGI, Willis Holloway, and Janet Scott.

With regard to Plaintiff's claim against Defendant SOTS, Plaintiff's evidence shows that Defendant SOTS submitted requests for payment to the government for treatment being performed at HGI's facility, while representing via its provider number that the treatment was being performed at SOTS' primary facility. Plaintiff's evidence also shows that the government paid these requests. In order to determine whether the government might not have paid these requests if it had known that the treatment was not being performed at Defendant SOTS' primary facility, the Court must determine whether Okla. Admin. Code § 317:30-5-240(c), which Defendant SOTS admits that it violated, should be characterized as a condition of payment or a condition of participation. *See United States ex rel. Sanchez-Smith v. AHS Tulsa Reg'l Med. Ctr.*, 754 F.Supp.2d 1270, 1289 (N.D. Okla. 2010) (explaining that conditions of participation do not, as a matter of law, support implied-false-certification claims, while conditions of payment do).

Under Okla. Admin. Code § 317:30-5-240(c)(2), "[e]ach site operated by an outpatient mental health facility must have a separate provider number," and "[f]ailure to obtain and utilize site specific provider numbers will result in disallowance of services." Although "disallowance of services" is not expressly defined in the regulations, the Court reads this language as a condition of payment, rather than a condition of participation.

This is because the prior language in this provision speaks of eligibility, and the "disallowance of services" language reads much more narrowly. In other words, this portion of the provision does not indicate that an eligible provider will be removed from the program for a violation of the provision; instead, it indicates that the eligible provider's ability to be reimbursed for specific services will be disallowed for a violation. *See Sanchez-Smith*, 754 F.Supp.2d at 1289 (defining conditions of payment as "those which, if the government knew they were not being followed, might cause it to actually refuse payment" (quoting *Conner*, 543 F.3d at 1220)). Because the violation of this site specific requirement in the regulations is a condition of payment, the Court concludes that the government might not have paid the claims if it had known that Defendant SOTS was violating this requirement.

Finally, the Court must determine whether the evidence establishes as a matter of law that Defendant SOTS knowingly submitted these legally false claims for payment to the OHCA. Under the FCA, "knowingly" means "that a person, with respect to information—(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). While "no proof of specific intent to defraud" is required, *id.*, Plaintiff must be able to establish that Defendant SOTS knowingly violated the site specific regulation. *See Sanchez-Smith*, 754 F.Supp.2d at 1295 (citing *Conner*, 543 F.3d at 1217-18). Having considered both Plaintiff's and Defendant SOTS' arguments, as well as the evidence submitted in support of these arguments, the Court finds that Plaintiff has submitted enough evidence to create a

question of fact as to whether Defendant SOTS knowingly violated the site specific requirement found in Okla. Admin. Code § 317:30-5-240(c)(2). This means that although Plaintiff is not entitled to summary judgment with regard to this claim, neither is Defendant SOTS—this claim must be preserved for the finder of fact. Accordingly, Plaintiff's motion with respect to Defendant SOTS' alleged fraudulent activity under an implied-false-certification theory is DENIED.

### VII. The Motions of Defendants HGI, Willis Holloway, and Janet Scott

Based upon the foregoing, both the Motion for Summary Judgment filed by Defendants HGI and Willis Holloway, and the Motion for Summary Judgment filed by Defendant Janet Scott, are GRANTED. For some reason, however, Defendants HGI and Willis Holloway failed to even mention—let alone discuss—their abuse of process counterclaim against Plaintiff. Thus, the counterclaim remains in this case.

### VIII. Defendant SOTS' Motion

Also based upon the foregoing, Defendant SOTS' motion is GRANTED in part and DENIED in part. Defendant SOTS' motion is GRANTED with respect to Plaintiff's claim of fraud under an express-false-certification theory, and Defendant SOTS' motion is DENIED with respect to Plaintiff's claim of fraud under an implied-false-certification theory. Plaintiff's claims on behalf of the United States for unjust enrichment and payment by mistake also remain against Defendant SOTS, because SOTS neither joined in the other Defendants' prior summary judgment motion, nor made any argument whatsoever as to the merits of these claims.

**IX. Conclusion**

In sum, Plaintiff's Motion for Partial Summary Judgment is DENIED. The Motions for Summary Judgment filed by Defendants HGI, Willis Holloway, and Janet Scott are GRANTED. And the Motion for Summary Judgment filed by Defendant SOTS is GRANTED in part and DENIED in part. The following claims remain in this case: (1) Plaintiff's claim of fraud against Defendant SOTS based upon an implied-false-certification theory; (2) the abuse of process counterclaim brought by Defendants HGI and Willis Holloway; and (3) Plaintiff's claims against Defendant SOTS on behalf of the United States for unjust enrichment and payment by mistake.

IT IS SO ORDERED this 2nd day of September, 2014.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE